Robert L. Carey, OSB No. 871860
Direct Telephone: 503.802.2032
Direct Facsimile: 503.972.3732
Email: bob.carey@tonkon.com
Christopher J. Pallanch, OSB No. 075864
Direct Telephone: 503.802.2104
Direct Facsimile: 503.972.3804
Email: christopher.pallanch@tonkon.com
Michael Willes, OSB No. 141806
Direct Telephone: 503.802.5737
Direct Facsimile: 503.274.8779
Email: michael.willes@tonkon.com
Sadie Concepción, OSB No. 185015
Direct Telephone: 503.802.5773
Direct Facsimile: 503.274.8779
Email: sadie.concepcion@tonkon.com
TONKON TORP LLP
888 SW Fifth Avenue, Suite 1600
Portland, OR 97204

*Attorneys for Defendant/Counterclaim Plaintiff Sprinklr, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

OPAL LABS INC., an Oregon corporation,

Plaintiff and Counterclaim Defendant,

v.

SPRINKLR, INC., a Delaware corporation,

Defendant and Counterclaim Plaintiff.

Civil No. 3:18-cv-01192-HZ

**DEFENDANT'S MOTION TO QUASH, MOTION TO STAY, AND MOTION FOR PROTECTIVE ORDER**

**[MATTER ASSIGNED TO SPECIAL MASTER, THE HON. HENRY KANTOR]**

## LR 7-1 CERTIFICATION

Counsel for Defendant certifies that they have conferred in good faith with Plaintiff's counsel by telephone regarding Defendant's Motion.

## MOTION

Defendant Sprinklr, Inc. requests that the Court quash and stay the subpoenas described below, and enter a protective order limiting the subpoenas. The subpoenas are overbroad, harassing, disproportional to the needs of the case, outside of the scope of reasonable discovery, and unnecessarily violate the confidential and proprietary interests of Sprinklr. Sprinklr further seeks a protective order. This motion is supported by Federal Rules of Civil Procedure 26 and 45, the pleadings and files on record in this case, and the below memorandum of law.

## MEMORANDUM OF LAW

This case has been actively litigated for the better part of three years. Yet Opal is insistent on requesting ever expanding and duplicative discovery both from Sprinklr and from a number of Sprinklr's service providers, customers, and employees. Recently, Opal served third-party subpoenas on four vendors that Opal believes provide software support services to Sprinklr. Opal appears to be seeking information regarding Sprinklr's confidential and proprietary information from several companies, including Facebook and Slack. The subpoenas are exceedingly broad and purport to request documents that "pertain" in any way to more than a dozen undefined terms. The result is that Opal is seeking almost all of Sprinklr's information that may be hosted on any of these platforms, regardless of whether that information relates to this case or not, and regardless of how confidential or secret that information may be.

Opal's subpoenas are overbroad, harassing, disproportional to the needs of the case, outside of the scope of reasonable discovery, and unnecessarily violate the

confidentiality interests of Sprinklr. The subpoenas should be quashed, and production of the requested documents should be stayed.

### A. Factual Background

For present purposes, Opal's eleven claims for relief in its Second Amended Complaint are derived from, or closely related to, the purported misappropriation of certain features and functions of Opal's software platform. Opal alleges that sometime in April 2014, Sprinklr improperly accessed Opal's software and created new software to its advantage. Opal filed its initial complaint in September 2017.

Between March 31, 2020, and April 6, 2020, Opal served a Notice of Intent to Serve Document Subpoenas on four third-parties, calling for confidential documents of Sprinklr's to be produced by either April 24, 2020, or May 1, 2020. (*See* Declaration of Christopher J. Pallanch [Pallanch Decl.], filed herewith, ¶ 2, Exs. 1–4.) Opal served at least one of the subpoenas on the same day that it gave notice of its intent to serve the subpoena, and served the remaining subpoenas within two days of giving notice of the subpoenas. (*See* Pallanch Decl. ¶ 3.)

Each of the subpoenas appears designed to seek confidential and proprietary information from Sprinklr's vendors. The subpoenas are to: (1) Facebook; (2) VMware; (3) Slack; and (4) Evernote. All four of the entities involved provide, or provided, collaboration software.

- Workplace for Facebook (not to be confused with a standard personal Facebook account) is a collaboration software program designed "for organizations to connect, communicate and collaborate. Organizations of all sizes can use familiar Facebook features like News Feed, groups, messages and events to get things done."[1]

---

[1] *See* "Workplace frequently asked questions," available at https://www.facebook.com/workplace/faq (last visited April 13, 2020). The Court may take judicial notice of information found on websites when a fact is not subject to reasonable dispute and can be readily determined. *See* Fed. R. Evid. 201; *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010); *Under A Foot Plant, Co. v. Exterior Design, Inc.*, No. 6:14-cv-01371, 2015 WL 1401697, at *2 (Mar. 24, 2015).

- VMware made a collaboration software program called Socialcast. Socialcast was VMware's "enterprise social networking platform," which allowed an organization's employees to share information and documents through a Twitter-like new feed. VMware discontinued Socialcast effective May 17, 2018.[2]

- Slack is a collaboration platform that aims to streamline intracompany communications. The software organizes communications in "channels," which can be divided by team, project, client, etc., and provide unique "places for messaging, tools and files."[3]

- Evernote is a note-taking program, which is designed to provide a "single place for your notes, ideas, lists and reminders."[4]

Sprinklr has not used each of the requested platforms throughout the timeframe covered by Opal's operative complaint.

- Sprinklr has used Workplace by Facebook from August 2016 to the present. (Declaration of Matthew Tedder [Tedder Decl.] ¶ 2.)

- Sprinklr previously used Socialcast from around May 2014 until December 2016, when access to users was cut off. (Tedder Decl. ¶ 3.) Sprinklr lost access to Socialcast data around March 1, 2017. (*Id.*) VMware—the maker of Socialcast—discontinued the program effective May 17, 2018. *See* https://www.vmware.com/products/socialcast.html (last visited April 13, 2020). Counsel for Opal recently confirmed that, after discussion with counsel for VMware, WMware no longer has any Socialcast data, and thus there is nothing to produce. (Pallanch Decl. ¶ 5.)

- Sprinklr has used Slack from approximately June 2015 to the present. (Tedder Decl. ¶ 4.) Sprinklr has already produced documents in response to Opal requests for production from Slack as a repository pursuant to an agreed upon process. (Pallanch Decl. ¶ 4.)

- Sprinklr has not centrally or officially adopted Evernote. (Tedder Decl. ¶ 5.) That is, while some employees may have installed Evernote on their own devices, the program is not supported by Sprinklr's information technology department. (*Id.*) In other words, determining which Sprinklr employees use Evernote would require an employee-by-

---

[2] *See* https://www.vmware.com/products/socialcast.html (last visited April 13, 2020).

[3] *See* https://slack.com/features (last visited April 13, 2020).

[4] *See* https://evernote.com/ (last visited April 13, 2020).

employee inquiry. (*See id.*) (Sprinklr has approximately 1,500 employees worldwide.)

The substance of the subpoena to each of the entities is the same.[5] (*See* Pallanch Decl. Exs. 1-4.) Opal requests "Documents" (in short, all electronically stored information) reaching from January 1, 2012, to the present, prepared by anyone at Sprinklr that relates to a list of 15 "topics." (*See id.*) The "topics" are broad and vague, and include entries such as "Ideation," "Beacon," "Amp," "Content Marketing," "Planner," and "Planning." (*See id.*) There is no secondary definition or restriction on the "topics," other than to say that Opal wants "all" documents that "relate, pertain, or concern" any of the topics. (*Id.*)

**B. Legal Standard**

"Discovery from a third party as permitted through a subpoena issued under Rule 45 is limited to the scope of discovery permitted under Rule 26(b)(1) in the underlying action and discovery outside of this scope is not permitted." *MetroPCS v. Thomas*, 327 F.R.D. 600, 609–10 (N.D. Tex. 2018); *see also Thull v. Techtronic Indus. Co., Ltd.*, No. 3:13-MC-00102, 2013 WL 12309781, at *7 (D. Or. Aug 12, 2013) ("Even for evidence otherwise discoverable, the scope of discovery is curtailed by specific provisions in Rule 45 and general considerations found in Rule 26"). The provisions and structure of Rule 26 and Rule 45 leave no doubt that the scope of permissible discovery from a third party is not broader than that permitted against a party. *MetroPCS*, 327 F.R.D. at 609–10.

Under Rule 26(b)(1), discoverable matter must be both relevant and proportional to the needs of the case. These are related, but distinct, requirements. *See Singh v. Home Depot, Inc.*, No. 3:17-CV-01640-MO, 2018 WL 6259534, at *1 (D. Or. Nov. 30, 2018) ("The scope of discovery may be limited, despite relevancy, to protect a party or person from annoyance, embarrassment, oppression, or undue

[5] The subpoena to VMware collapses two of the "topics" into one, but all four otherwise cover the same 15 topics.

burden or expense"); *In re Bard IVC Filters Prod. Liab. Litig.*, 317 F.R.D. 562, 564 (D. Ariz. 2016) ("Relevancy alone is no longer sufficient—discovery must also be proportional to the needs of the case."). Because the scope of discovery is the same under both Rules 45 and 26, the Court may properly apply the Rule 26(b)(1) proportionality factors in the context of Rule 45(d)(3)(A) motion to quash, a Rule 45(d)(2)(B)(i) motion for protective order, as well as in the context of Rule 45(d)(1)'s mandate to avoid imposing undue burden or expense. *MetroPCS*, 327 F.R.D. at 610; *see also In re Williams-Sonoma, Inc.*, 947 F. 3d 535, 539 (9th Cir. 2020) (noting, through reference to the Advisory Committee's note to the 2000 amendment, that changes to Rule 26(b)(1) were "intended to restrict, not broaden, the scope of discovery").

Under Rule 45, "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A).

The Court may find that a subpoena presents an undue burden when the subpoena is facially overbroad. *See Hampton v. Steen*, No. 2:12-CV-00470-SU, 2014 WL 2949302, at *10 (D. Or. June 27, 2014) (granting a motion to quash, on grounds that include undue burden, "facially irrelevant and overly broad subpoenas" to nonparties, deeming them an "abuse[] [of] the subpoena process"); *Mattel, Inc. v. Walking Mountain Productions*, 353 F. 3d 792, 813–814 (9th Cir. 2003) (upholding lower court's finding that party's overbroad subpoena to nonparty was an undue burden and its imposition of sanctions as a result); *see also Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409-410 (C.D. Cal. 2014) (emphasizing the case-specific nature of the undue burden inquiry, and noting that

"a court should consider . . . the relevance of the requested information and the breadth or specificity of the discovery request").

Under Rule 26(b)(2)(C), the Court "must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the discovery sought is cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive," "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action," or "the proposed discovery is outside the scope permitted by Rule 26(b)(1).

**C. The Court should quash the subpoenas and stay any production of documents.**

The Court should quash the subpoenas and stay production of the documents. At a minimum, Sprinklr requests that the Court enter an appropriate protective order limiting the duplicative and ever-expanding discovery propounded by Opal on third parties, as well as protecting Sprinklr's confidential and proprietary information.

**1. Standing**

A party has standing to quash a subpoena pursuant to Rule 45 and standing to move for a protective order pursuant to Rule 26. To have standing to quash a subpoena served on a third party, one must have a "personal right or privilege" in the requested documents. *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 973–74 (C.D. Cal. 2010) (quoting 9A Charles Wright & Arthur Miller, FEDERAL PRACTICE & PROCEDURE, § 2459 (3d ed. 2008)). This right or privilege extends to electronic data hosted by another entity. *See, e.g.*, *Riley v. California*, 573 U.S. 373, 134 S. Ct. 2473, 2494–95, 189 L.Ed. 2d 430 (2014) (person has a right or privilege to their own IP addresses, network transactions, telephone numbers, device numbers and web browsing history). Courts throughout the Ninth Circuit

have consistently held that the Stored Communications Act ("SCA"), 18 U.S.C. §2701, prohibits electronic communication service providers from disclosing customers' stored data pursuant to subpoenas duces tecum. *See Theofel v. Farey-Jones*, 359 F.3d 1066, 1074 (9th Cir. 2004) (subpoena to electronic communication service provider violated the SCA); *Suzlon Energy Ltd. v. Microsoft Corp.*, 671 F.3d 726, 728 (9th Cir. 2011) (the SCA "mak[es] it illegal for an entity that provides an electronic communication service to the public to produce the contents of its stored communications"); *In re Facebook, Inc.*, 923 F. Supp. 2d 1204, 1206 (N.D. Cal. 2012) ("The case law confirms that civil subpoenas may not compel production of records from providers like Facebook. To rule otherwise would run afoul of the specific [privacy] interests that the [SCA] seeks to protect." (internal quotations omitted)). "A valid interest in obtaining relevant information . . . is not a license to override . . . privacy interests and federal law," and "[p]otential relevance . . . does not eliminate the SCA's prohibition on the release of" such protected information. *Hone v. Presidente USA, Inc., et al.*, No. CV-08-80071, 2008 WL 9010061, at *2 (N.D. Cal. July 21, 2008).

Here, all of the subpoenas seek information that belongs to Sprinklr but that may be "hosted" or stored by a third-party provider. That a third party may store data on behalf of a company does not change the fundamental proprietary nature or ownership of that data. Were it otherwise, no one's data would be secure.

**2. The subpoenas seek irrelevant information.**

The subpoenas seek information that is irrelevant to the claims and defenses of this case. The subpoenas are not restricted or limited to facts underlying the claims and defenses in this case; rather, Opal is seeking information about a variety of "topics" and projects of Sprinklr, many of which are at best tangentially related to this case, and all of which contain data that is entirely irrelevant. Opal should not

be able to access Sprinklr's confidential information, especially if that information is irrelevant to the claims and defenses in this case.

More specifically, the subpoena to Facebook would likely only seek irrelevant information because the thrust of Opal's complaint centers around events that happened in April 2014. Sprinklr did not start to use Workplace until August 2016. Opal should not be given access to irrelevant, but confidential, information of Sprinklr.

**3. The subpoenas seek confidential information that is not proportional to the needs of the case.**

In addition to cost, expense, and burden, "courts and commentators have recognized that privacy interests can be a consideration in evaluating proportionality, particularly in the context of a request to inspect personal electronic devices." *Henson v. Turn, Inc.*, No. 15-CV-01497-JSW (LB), 2018 WL 5281629, at *5 (N.D. Cal. Oct. 22, 2018); *see also In re Anthem, Inc. Data Breach Litig.*, No. 15-md-02617 LHK (NC), 2016 WL 11505231, at *1–2 (N.D. Cal. Apr. 8, 2016) (request to inspect plaintiffs' electronic devices would "invade plaintiffs' privacy interests" and was "disproportional to the needs of the case"); *Crabtree v. Angie's List, Inc.*, No. 1:16-cv-00877-SEB-MJD, 2017 U.S. Dist. LEXIS 12927, 2017 WL 413242, at *3 (S.D. Ind. Jan. 31, 2017) (request to forensically examine plaintiffs' personal cell phones "is not proportional to the needs of the case because any benefit the data might provide is outweighed by Plaintiffs' significant privacy and confidentiality interests").

The subpoenas here threaten to sweep in information that is privileged and confidential and should be quashed accordingly. To the extent the subpoenas could encompass any relevant information, the subpoenas still are disproportionate to the needs of the case to the extent that Opal has requested, or could request, the same information from Sprinklr directly.

Additionally, by serving subpoenas contemporaneously with (or shortly after) providing notice of intent to serve the subpoena, Opal has deprived the parties of any meaningful conferral to limit the scope of the subpoenas to relevant information in a manner that would be proportionate to the needs of the case. *Cf.* Advisory Comm. Note, FRCP 45(b) (the purpose of giving notice is to allow other parties to object to the production or to serve additional production requests).

**4. The subpoenas appear designed to harass Sprinklr's vendors.**

Despite having the tools to make formal discovery requests of Sprinklr and having an orderly conferral process that could limit the discovery matters at issue, and despite having already agreed to an electronic discovery protocol at the outset of this case, Opal has now moved on to serving subpoenas directly on third parties for Sprinklr's information. Opal does not need to go to Sprinklr's vendors to obtain the information (assuming for the sake of argument that Opal has any right to obtain that information in the first place). It should first request the information from Sprinklr.

Having an orderly process for electronic discovery is in part why Sprinklr agreed to electronic discovery protocol at the outset of the case. If Opal wishes to re-visit the contours of the agreed upon protocol, it should do so directly instead of pursuing third parties and seeking to have Sprinklr's vendors and publishing partner incur additional costs and expenses in either objecting to or responding to a subpoena.

**5. The subpoenas create an undue burden.**

Finally, this Court also "may find that a subpoena presents an undue burden when the subpoena is facially overbroad." *See Wiwa v. Royal Dutch Petr. Co.*, 392 F.3d 812, 818 (5th Cir. 2004); *see also Mount Hope Church v. Bash Back!*, 705 F. 3d 418, 427 (9th Cir. 2012) ("undue burden" under Rule 45 includes "the burden

associated with compliance"). In the present case, the subpoenas are facially overbroad. Seeking all "Documents" (amounting to all electronically stored information) that "pertain" in any way to a list of 15 nebulous topics is overbroad on its face.

**D. The Court should enter a protective order.**

Rule 26(c)(1) gives the Court broad discretion in setting the contours of a protective order. Sprinklr requests that the Court enter a protective order that prevents Opal from engaging in unreasonable discovery from third parties. Sprinklr must be protected from the overbroad, unduly burdensome, and intrusive subpoenas that, as presented, are not proportional to the needs of the case and unnecessarily infringe on important confidentiality and business interests. Additionally, no third party should be required to produce any documents unless and until appropriate steps are taken to limit any production to relevant material (if any at all) and to safeguard Sprinklr's confidential information.

**CONCLUSION**

For the above reasons, Sprinklr requests that its motion be granted, that the subpoenas be quashed, the production of documents under the subpoenas be stayed, and a protective order be entered that any subpoenas or related discovery be much more narrowly tailored to the needs of the case, and for such other further relief to which Sprinklr may be justly entitled.

DATED this 16th day of April, 2020

TONKON TORP LLP

By *s/ Christopher J. Pallanch*

Robert L. Carey, OSB No. 871860
Christopher J. Pallanch, OSB No. 075864
Michael Willes, OSB No. 141806
Sadie Concepción, OSB No. 185015
*Attorneys for Defendant/Counterclaim Plaintiff Sprinklr, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2020, I served the foregoing **DEFENDANT'S MOTION TO QUASH, MOTION TO STAY, AND MOTION FOR PROTECTIVE ORDER** on:

Chad M. Colton
*chadcolton@markowitzherbold.com*
Adam M. Starr
*adamstarr@markowitzherbold.com*
Stanton R. Gallegos
*stantongallegos@markowitzherbold.com*
Daniel J. Dicicco
*dandicicco@markowitzherbold.com*
Markowitz Herbold PC
1455 SW Broadway, Suite 1900
Portland, OR 97201

*Attorneys for Plaintiff/Counterclaim Defendant Opal Labs Inc.*

B. Scott Whipple
*scott@whipplelawoffice.com*
Whipple Law Office LLC
1675 SW Marlow Avenue, Suite 201
Portland, OR 97225
*Attorney for Defendant Paul Herman*

☐ by mailing a true and correct copy thereof by U.S. Postal Service, ordinary first class mail, addressed to each attorney's last-known address and depositing in the U.S. mail at Portland, Oregon, on the date set forth above;

☐ by delivering a true and correct copy thereof by electronic means as provided in Fed. R. Civ. P. 5(b)(2)(E)

☑ by electronic means through the Court's Case Management/Electronic Case File system on the date set forth below

DATE: April 16, 2020.

TONKON TORP LLP

By: *s/ Christopher J. Pallanch*
Robert L. Carey, OSB No. 871860
Christopher J. Pallanch, OSB No. 075864
Michael Willes, OSB No. 141806
Sadie Concepción, OSB No. 185015
*Attorneys for Defendant/Counterclaim Plaintiff Sprinklr, Inc.*