IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

OPAL LABS, INC., an Oregon Corporation,

        Plaintiff,

                                    Case No. 3:18-cv-01192-HZ

    v.

                                    OPINION & ORDER

SPRINKLR, INC., a Delaware Corporation,

        Defendant.

Adam M. Starr
Chad M. Colton
Stanton R. Gallegos
Daniel DiCicco
Markowitz Herbold, P.C.
1211 SW Fifth Avenue, Suite 3000
Portland, OR 97204

        Attorneys for Plaintiff

Robert Lane Carey
Christopher J. Pallanch
Sadie Concepcion
Michael C. Willes
Tonkon Torp, LLP
1600 Pioneer Tower
888 SW Fifth Avenue
Portland, OR 97204

        Attorneys for Defendant

1 – OPINION & ORDER

HERNÁNDEZ, District Judge:

Plaintiff brings this action for breach of contract, fraud, violation of the Uniform Trade Secrets Act, tortious interference with economic relations, and declaratory relief against Defendant. Defendant counterclaims for declaratory relief, attorney's fees, and bad faith. Before the Court is Plaintiff's motion for partial summary judgment, which seeks judgment as a matter of law that the parties' Integration Agreement has no retroactive effect on the parties' Non-Disclosure Agreement and Teaming Agreement. The Court grants Plaintiff's motion for partial summary judgment.

## BACKGROUND

Plaintiff is a software developer that "provides content creation, marketing and planning software, and services to large companies" across the country. Pl. Second Am. Compl. ("SAC") ¶ 7, ECF 61. Plaintiff's software helps companies create and plan marketing campaigns. *Id*. Defendant is a large software developer whose software platform enables large companies to market their products to consumers on social media sites and analyze advertising and marketing content on social media. *Id*. at ¶¶ 9, 10. Because the features of the parties' software platforms were complementary, Plaintiff and Defendant teamed up to cross-market their products to clients. They also agreed to explore the feasibility of developing a new integration technology that would allow users to integrate the features of their existing software platforms and make it easier for customers to use the two platforms together. *Id*. at ¶¶ 13–14.

During the parties' business relationship, they entered into a series of contracts. First, the parties entered into a Mutual Non-Disclosure Agreement ("NDA") on July 17, 2013. *Id*. at ¶ 15. Next, the parties entered into a Teaming Agreement, which became effective on May 16, 2014. Starr Decl. Ex. 1 ("Teaming Agreement") at 1, ECF 81-1. The purpose of the Teaming

2 – OPINION & ORDER

Agreement was to document the parties' agreement to introduce one another to their respective

clients and to market the benefits of using their complementary software together. *Id*. at ¶ 1.1;

SAC ¶ 34.

The parties then executed an agreement called the "Opal Software Integration

Agreement," which became effective on April 11, 2016. Starr Decl. Ex. 2 ("Integration

Agreement") at 1, ECF 81-2. The Integration Agreement provides that the parties would research

and explore the possibility of integrating the features of their respective technologies into a new

product. *Id*. at ¶ 2. The Integration Agreement's choice of law provision directs that "any dispute

under this Agreement will be governed by and construed under the laws of the State of New

York without regard to any of its conflict of laws principles." *Id*. at ¶ 11.9. The Integration

Agreement also includes a merger clause:

> <u>Entire Understanding</u>.  This Agreement and the attached exhibits set forth the entire
> agreement and understanding of the Parties in respect to the transactions
> contemplated and supersedes all prior agreements, arrangements, representations,
> term sheets, and understandings relating to the subject matter of this Agreement;
> provided, however[,] that this Agreement does not limit or discharge the rights of
> either party existing prior to the existence of the Agreement. This Agreement may
> be amended, modified, or supplemented only in a writing signed by respective
> officers of the Parties. This Agreement is not intended to confer upon any person,
> other than the signing parties, any rights or remedies.

*Id*. ¶ 11.11.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact

and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The

moving party bears the initial responsibility of informing the Court of the basis of its motion and

identifying those portions of "'the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any,' which it believes demonstrate the

3 – OPINION & ORDER

absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)

(quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden to demonstrate the absence of a genuine

issue of material fact, the burden then shifts to the nonmoving party to present "specific facts"

showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927-28 (9th

Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the

pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218

(9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v.

Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The Court draws inferences from the facts in the

light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108,

1112 (9th Cir. 2011).  If the factual context makes the nonmoving party's claim as to the

existence of a material issue of fact implausible, that party must come forward with more

persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec.

Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Summary judgment is improper

where divergent ultimate inferences may reasonably be drawn from the undisputed

facts." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014)

(internal quotation marks omitted); *see also Int'l Union of Bricklayers & Allied Craftsman Local

Union No. 20, AFL-CIO v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985) ("Even

where the basic facts are stipulated, if the parties dispute what inferences should be drawn from

them, summary judgment is improper.").

///

///

4 – OPINION & ORDER

**DISCUSSION**

Plaintiff seeks partial summary judgment on the limited question of whether the

Integration Agreement applies retroactively. Plaintiff argues that, regardless of how the

Integration Agreement affected prior agreements after the Integration Agreement became

effective, the Integration Agreement had no retroactive effect before its effective date of April

11, 2016, and only the Non-Disclosure Agreement and Teaming Agreement govern the period

before April 11, 2016.

Defendant argues that the effect of the Integration Agreement's merger clause is that the

Integration Agreement retroactively superseded the Non-Disclosure Agreement and the Teaming

Agreement. The result, Defendant argues, is that the Integration Agreement became the only

agreement governing the parties' relationship and foreclosed Plaintiff from bringing a claim for

breach of the Teaming Agreement or the Non-Disclosure Agreement, regardless of when the

breach occurred.

### A. Choice of Law

Before reaching the effect of the Integration Agreement's merger clause, the Court must

decide what law applies to interpreting that contract. Plaintiff argues that New York law applies,

and Defendant maintains that Oregon law applies. Pl. Mot. Part. Summ. J. ("Pl. Mot.") 4, ECF

80; Def. Resp. Mot. Part. Summ. J. ("Def. Opp'n") 6, ECF 94. Defendant argues that regardless

of which state's law applies, the result under either state's law is that the Integration Agreement

retroactively revoked and replaced the NDA and Teaming Agreement. Def. Opp'n 6. A federal

court sitting in diversity applies the forum state's choice of law rules to determine what law

applies. *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 975 (9th Cir. 2013).

Thus, Oregon's choice of law rules will determine whether the Court should apply Oregon or New York law to construe the Integration Agreement. *Id.*

Generally, when parties to a contract clearly express in the contract the law that applies, "the contractual rights and duties of the parties are governed by the law or laws that the parties have chosen." Or. Rev. Stat. § ("O.R.S.") 15.350(1)–(2). O.R.S. 15.350 is subject to two relevant limitations.[1] First, enforcing the choice of law provision must not require a party to perform an act prohibited by law, prevent a party from performing an act required by law, or "contravene an established fundamental policy embodied in the law"[2] that would govern the issues under O.R.S. 15.360.[3] O.R.S. 15.355(1). Neither party argues that enforcing the Integration Agreement's choice of law provision would violate O.R.S. 15.355(1).

Second, O.R.S. 15.350 applies only to contracts that are valid in form, entered into by parties with the capacity to contract, and agreed to by parties who have consented to the contract. O.R.S. 15.325–.335. Again, neither party argues that the formation of the contract was flawed. As a result, O.R.S. 15.350 requires the Court to apply the parties' choice of New York law.

### B. Ambiguity

The Court's determination of whether a contract's provisions are ambiguous is a question of law. *Travelers Indem. Co. v. Northrup Grumman Corp.*, 416 F. Supp. 3d 290, 299 (S.D.N.Y. 2019) (citing *Lend Lease (US) Constr. LMB Inc. v. Zurich Am. Ins. Co.*, 71 N.E.3d 556, 559–61

---

[1] Another requirement, which applies only to standard form contracts drafted primarily by only one of the parties, requires that the choice of law provision be conspicuous. O.R.S. 15.350(2). Neither party argues that this requirement applies here, or that the choice of law provision in the Integration Agreement is inconspicuous.

[2] "[A]n established policy is fundamental only if the policy reflects objectives or gives effect to essential public or societal institutions beyond the allocation of rights and obligations of parties to a contract at issue." O.R.S. 15.355(2).

[3] O.R.S. 15.360 applies "[t]o the extent that an effective choice of law has not been made by the parties pursuant to ORS 15.350 or 15.355 . . . ."

(N.Y. Ct. App. 2017))). To determine whether an agreement is ambiguous, the Court "'should

examine the entire contract and consider the relation of the parties and the circumstances under

which it was executed. Particular words should be considered,[] not as if isolated from the

context, but in the light of the obligation as a whole and the intention of the parties as manifested

thereby.'" *Kass v. Kass*, 696 N.E.2d 174, 180–81 (N.Y. Ct. App. 1998) (quoting *Atwater & Co.

v. Panama R.R. Co.*, 159 N.E. 418 (N.Y. Ct. App. 1927)). When the contract "makes clear the

parties' over-all intention, courts examining isolated provisions 'should then choose that

construction which will carry out the plain purpose and object of the [agreement.]'" *Id*. at 181

(quoting *Williams Press v. State of N.Y.*, 335 N.E.2d 299 (N.Y. Ct. App. 1975)) (brackets in

original).

　　　　Both parties argue that the merger clause is unambiguous, but each party reaches a

different conclusion about whether the Integration Agreement retroactively replaced the NDA

and Teaming Agreement and became the only contract that Plaintiff can sue on. The Court finds

that the relevant terms are unambiguous. As a result, the Court does not consider the parties'

parol evidence or related arguments. *See Schron v. Troutman Sanders LLP*, 986 N.E.2d 430, 433

(N.Y. Ct. App. 2013) ("Parol evidence—evidence outside the four corners of the document—is

admissible only if a court finds an ambiguity in the contract[.]").

　　　　Adopting the interpretation of the merger clause that Defendant urges the Court to adopt

would render the merger clause and the effective date of the Integration Agreement inconsistent

with one another. The effective date of the Integration Agreement was April 11, 2016.

Integration Agreement 1 (the Integration Agreement "is effective as of April 11, 2016"), ¶ 7.1

("This Agreement begins on the Effective Date"). If the parties intended the Integration

Agreement to "begin" before April 11, 2016, then the parties would have selected an earlier

effective date or otherwise so specified in the terms of the agreement. Instead, they agreed that

the Integration Agreement would begin on April 11, 2016. That term unambiguously compels

the conclusion that it had no effect before April 11, 2016. Any interpretation of the Integration

Agreement that would give it effect before April 11, 2016, would clearly contradict its effective

date provisions. *See Frank v. Metalico Rochester, Inc.*, 174 A.D.3d 1407, 1411 (N.Y. App. Dep't

4 2019) ("One portion of a contract should not be read so as to negate another portion.") (internal

quotation marks and brackets omitted).

The same is true for the merger clause. The merger clause provides that the Integration

Agreement supersedes all prior agreements, "provided, however[,] that this Agreement does not

limit or discharge the rights of either party existing prior to the existence of the Agreement." *Id*.

¶ 11.11.[4] The Integration Agreement did not exist before it began on the effective date.

Interpreting the merger clause to mean that Plaintiff did not retain the right to pursue remedies

for breach of the NDA and the Teaming Agreement would negate the terms of the merger clause

following the semicolon, which states that the parties did not "limit or discharge" their rights that

existed before the Integration Agreement.

Defendant argued at oral argument that by including the reservation of rights language

after the semicolon, the intent of the parties was to preserve only their rights against third parties.

That interpretation would be inconsistent with the definition of "Parties" in the contract.

"Parties" is defined as "Opal and Sprinklr, and any Affiliates thereof, collectively." *Id*. ¶ 1.14.

---

[4] A nearly identical merger clause appears in the Teaming Agreement: "This Agreement is the entire agreement between the parties relating to this subject matter, and supersedes all prior or contemporaneous understandings of the parties related thereto; provided, however that this agreement does not limit or discharge the rights of either party existing prior to the existence of the Agreement." Teaming Agreement ¶ 5.4.

The merger clause refers only to "the Parties" and "either party."[5] *Id.* ¶ 11.11. Reference only to

the Parties and "either party" in the merger clause, rather than third parties, compels the

conclusion that the phrase "provided, however[,] that this Agreement does not limit or discharge

the rights of either party existing prior to the existence of the Agreement" referred to Sprinklr

and Opal's rights against anyone, including one another. Elsewhere in the Integration

Agreement, the terms "third party" and "third-party actions" appear, and paragraph 8.1 defines

the term "third party" that applies to that paragraph. *Id.* ¶¶ 4.3; 6.1; 8.1 (defining "third party" as

"a person or entity wholly unrelated to Indemnitee or any Affiliate thereof, and does not include

any Affiliate or assignee of Indemnitee or any other person or entity under the control of or

acting in concert with Indemnitee, whether directly or indirectly."). Defendant's interpretation

that the rights preserved in paragraph 11.11 were limited to those against third parties would read

a limitation into the merger clause that does not exist and that is implausible given the other uses

of "third party" throughout the Integration Agreement.

The plain language of the merger clause and effective date in the Integration Agreement

are susceptible to only one plausible interpretation: The Integration Agreement began on April

11, 2016, and preserved Plaintiff's right to pursue claims for breach of the NDA and Teaming

Agreement. As a result, those provisions are unambiguous.

### C.  General Merger Clause Language

Generally, "a merger clause acts only to require full application of the parol evidence rule

to the writing in question . . . ." *Bank Julius Baer & Co. v. Waxfield Ltd.*, 242 F.3d 278 (2d Cir.

2005), *abrogated in part on other grounds by Applied Energetics, Inc. v. NewOak Cap. Mkts.,*

---

[5] The Court notes that although the word "party" is not capitalized in the merger clause, it is capitalized throughout most of the rest of the Integration Agreement. *See, e.g.,* ¶¶ 4.4.2; 5.4.1; 6.1; 6.3; 7.2; 7.5.1; 8.1.

*LLC*, 645 F.3d 522, 546 (2d Cir. 2011); *see also Dialcom, LLC v. AT&T Corp.*, 20 Misc.3d

1111(A), at \*8 (N.Y. Sup. Ct. 2008) (merger clause stating that the terms and conditions in a

contract "constitute[d] the entire Agreement between the parties" and "supersede[d] all prior oral

or written understandings between the parties concerning its subject matter" operated only to

"prevent[] one party from alleging oral misrepresentations which directly contradict the language

of the agreement signed by the party") (internal quotation marks and citation omitted). A merger

clause containing only general language stating that the contract supersedes a prior agreement is

"'insufficient to establish any intent of the parties to revoke retroactively'" a prior agreement.

*Gen. Motors Corp. v. Fiat S.p.A*, 678 F. Supp. 2d 141, 148 (S.D.N.Y. 2009) (quoting *Primex*

*Int'l Corp. v. Wal-Mart Stores, Inc.*, 679 N.E.2d 624, 627 (N.Y. Ct. App. 1997)).

For a contract's general merger clause to revoke and retroactively replace a prior

contract, the parties must "'clearly express[] or manifest[] their intention that [the] subsequent

agreement supersede or substitute for [the prior agreement.]'" *Northville Indus. Corp. v. Fort*

*Neck Oil Terms. Corp.*, 100 A.D.2d 865, 867 (N.Y. Sup. Ct. 1984) (quoting *Am. Broad.-*

*Paramount Theaters v. Am. Mfrs. Ins. Co.*, 48 Misc.2d 397, 403 (N.Y. Sup. Ct. 1965)). Language

that New York courts have found to be sufficiently clear to manifest an intent to replace

retroactively a prior agreement includes, for example: "This Agreement shall be in lieu of and

supersede any other agreements existing as of [the date of this Agreement]." *Id*.

On the other hand, New York Courts have held that language in a contract that states that

the agreement "contains the complete agreement of the parties and supersedes all prior

agreements and understandings of the parties relating to the subject matter of this Agreement . . .

merely prevents one party from alleging oral misrepresentations which directly contradict the

language of the agreement" rather than invalidating and replacing a prior agreement. *Chase v.*

*Columbia Nat. Corp.*, 832 F. Supp. 654, 662 (S.D.N.Y. 1993); *see also Dialcom, LLC*, 20

Misc.3d 1111(A), at *8 (rejecting the argument that "the purpose of a merger clause is to ensure

that the governing contract supersedes all prior agreements" and holding that the merger clause

applied only to the representations that culminated in the contract in which the merger clause

appeared). Thus, only those representations that culminated in the Integration Agreement are

foreclosed by the Integration Agreement's merger clause. *Chase*, 832 F. Supp. at 662. The

Integration Agreement's general merger clause is nearly identical to the merger clause at issue in

*Chase* and is insufficient to revoke and replace the earlier agreements under New York law.

The contracts at issue in the cases that Defendant relies on in support of its argument that

the Integration Agreement retroactively revoked and replaced the NDA and Teaming Agreement

did not include the same qualifying language that appears in paragraph 11.11 of the Integration

Agreement. As a result, those cases are distinguishable and do not compel the conclusion that the

Integration Agreement retroactively revoked and replaced the NDA and the Teaming Agreement.

*See Zendon v. Grandison Mgmt., Inc.*, No. 18-cv-4545 (ARR) (JO), 2018 WL 6427636, at *2

(E.D.N.Y. Dec. 7, 2018) (merger clause in an agreement that did not require arbitration did not

retroactively terminate the parties' agreement to arbitrate disputes arising under an earlier

agreement); *Gadelkareem v. Blackbook Capital LLC*, 46 Misc.3d 149(A), at *1 (N.Y. Sup. Ct.

2015) ("since the agreement to arbitrate does not vary or contradict the provisions of the

subsequent employment agreement, the merger clause set forth in the employment agreement

cannot be read as expressing an intent to revoke retroactively the parties' [earlier] arbitration

agreement[.]") (citations omitted); *Primex Int'l Corp.*, 679 N.E.2d at 627 ("'The fact that this

other contract relates to what is, in important aspects, the same transaction, does not extend this

11 – OPINION & ORDER

[merger] paragraph to the destruction of that other [earlier] contract.'") (quoting *Champlin Refin.*

*Co. v. Gasoline Prods. Co.*, 29 F.2d 331, 337 (1st Cir. 1928)).

### D. Subject Matter of the Contracts

A contract with a merger clause supersedes a prior contract when the later contract

concerns "precisely the same subject matter" as the earlier agreement or includes "definitive

language indicating it revokes, cancels or supersedes that specific prior contract." *CreditSights,*

*Inc. v. Ciasullo*, No. 05-cv-9345(DAB), 2007 WL 943352, at *6 (S.D.N.Y. Mar. 29, 2007)

(citing *Globe Food Servs. Corp. v. Consol. Edison Co. of N.Y.*, 184 A.D.2d 278 (N.Y. App. Ct.

1st Dep't 1992)).; *Indep. Energy Corp. v. Trigen Energy Corp.*, 944 F. Supp. 1184, 1195

(S.D.N.Y. 1996). The Integration Agreement does not meet either of those requirements.

Because the Integration Agreement includes no reference to the NDA or the Teaming

Agreement, it obviously contains no "definitive language indicating [that] it revokes, cancels, or

supersedes" the NDA or the Teaming Agreement. The only remaining possibility that the

Integration Agreement could supersede the NDA and Teaming Agreement on a retroactive basis

is if the Integration Agreement concerns precisely the same subject matter as the NDA and the

Teaming Agreement. The Court finds that it does not.

Defendant points to the confidentiality provisions in the NDA, Teaming Agreement, and

the Integration Agreement and argues that the similarities between those provisions establish that

the contracts concern precisely the same subject matter. The stated purpose of the NDA was to

"make use of the Confidential Information only for the following purpose: to establish any

business relationship between the two parties." Def. Mot. Part. J. Pldg., Pallanch Decl. Ex. 1

("NDA"), ECF 70-1. The NDA provides that the parties would protect one another's

"Confidential Information" and disclose it only to employees who need to know and who agreed

to be bound by the terms of the NDA. *Id*. "Confidential Information" includes

> any information disclosed . . . which is or should be reasonably understood to be
> confidential or proprietary to the Discloser, including, but not limited to,
> information concerning each party's business, products, services, content, finances,
> subscribers, source code, tools, protocols, product designs and plans, customer lists,
> and other marketing and technical information and other unpublished information.

*Id*.

The purpose of the Teaming Agreement was to establish the terms that would govern the

parties' cross-marketing of each other's software platforms to their clients. Teaming Agreement

¶ 1.1 (the parties will "work together" to introduce their clients to one another "for purposes of

jointly-pitching the Sprinklr Platform and Opal Services to such clients."). The Teaming

Agreement describes the "Teaming Activities" as client introductions in which both parties

would discuss the other party's software services and technology with their respective clients and

keep one another informed of the progress of their discussions with those clients. *Id*. The

description of the Teaming Activities provides that neither party would be responsible for

matters relating to agreements between a party and a client that the other party had introduced

and that neither party had to negotiate with or engage with a client that the other party had

introduced. *Id*. To educate one another about the products and services that the other party

offered, each party agreed to provide the other party with training and materials about their

products and services. *Id*. ¶ 1.2. The Teaming Agreement includes a confidentiality provision

that required each party to keep confidential all non-public or proprietary information of the

other party about "past, present, and future research, development, business activities, products,

software, services, technical knowledge, and clients

. . . in the same manner that it protects the confidentiality of its own confidential information of

like kind . . . ." *Id*. ¶¶ 4.1, 4.2.

13 – OPINION & ORDER

The purpose of the Integration Agreement, on the other hand, was to govern the parties' joint efforts to explore, research, and develop a new technology together. Integration Agreement 1 ("Opal has developed and sells Software . . . Sprinklr has developed and sells software . . . [and] Opal and Sprinklr intend to mutually develop certain technology . . . which will enable mutual customers (Customers) to simultaneously exploit the benefits of Services provided by both Parties, and the Parties desire to individually and cooperatively market and sell these capabilities[.]"). "Confidential Information" is defined in the Integration Agreement as

> All non-public information about either Party's Independent Technology . . . [and] includes, without limitation . . . product and product planning information, specifications, components, design and production methods, trade secrets, secret processes and formulae, software and related documentation, including, without limitation, source or object codes for such software, related marketing and business data, methods, strategies, product pricing or anticipated pricing, plans and materials, and any agreements, records, and reports concerning them, as well as any information received from third parties that either Party is obligated to treat as confidential.

*Id*. ¶ 1.5. The Integration Agreement required each party to keep Confidential Information in strict confidence using "at least the same standard of care as it uses to protect its own confidential information of a similar nature to ensure that its employees do not disclose or make any unauthorized use of such Confidential Information, but in no case less than a reasonable standard of care." *Id*. ¶ 6.1.

The Integration Agreement also separately defines the terms "Independent Technology" and "Integration Technology." *Id*. ¶¶ 1.9, 1.12. The "Integration Program" is defined as "the collaborative development of Software or other Technology, specifically including any application program interface(s), intended to be commercialized by the Parties and licensed to Customers." *Id*. 1.11.

///

14 – OPINION & ORDER

The Integration Agreement also provides that the parties would meet

> from time to time to explore opportunities to collaborate with each other under an
> Integration Program to develop new Technology that could potentially benefit the
> Parties. If, as a result of these meetings, the Parties mutually agree to pursue an
> Integration Program, the Parties will work in cooperation, to define goals and
> objectives, the scope of work, milestones, and timelines of the Integration Program.

*Id*. ¶ 2. The Integration Agreement established that the parties would continue to own their

Independent Technology, and each party granted the other party a limited license to use the other

party's Independent Technology and intellectual property for research purposes. *Id*. ¶ 4.4.1. The

agreement granted both parties a nonexclusive, royalty-free license to use the Integration

Technology it would own under the agreement for commercial purposes. *Id*. ¶ 4.4.2. It also

provides that the parties "may, but are not required to pursue joint or cooperative marketing

activities which may be further detailed in an exhibit or addendum hereto . . . provided that

neither Party is obligated to market Integration Technology or the other Party's Services to all

customers or prospective customers of such Party." *Id*. ¶ 5.2. In addition, the Integration

Agreement includes mutual indemnification, disclaimer of warranty, and limitation of liability

provisions. *Id*. ¶¶ 8–10.

The terms of the NDA, Teaming Agreement, and Integration Agreement do not overlap

to the extent that they concern "precisely the same subject matter." It is not enough that the

contracts relate to the parties' business relationship or broadly the same topics. *See CreditSights,*

*Inc.*, 2007 WL 943352, at *6 ("While these agreements may in some cases have broadly

associated subject matter in common, that alone is not a sufficient basis for finding that the later

agreements supersede the [earlier agreement] under New York contract law."). The NDA's

overall objective was to protect the parties from unauthorized disclosure of their independent

confidential information while they explored whether to establish a business relationship. The

subject matter of the Teaming Agreement documented the parties' joint marketing relationship

15 – OPINION & ORDER

and outlined the efforts that they would undertake to market jointly their existing products and services. None of the Teaming Agreement's terms concern the development of any new technology. The Integration Agreement defined the parties' rights and obligations concerning their development of new integration technology and provided that the parties may, but did not have to, continue joint marketing efforts of the other party's services or any Integration Technology developed during the Integration Program. None of those purposes concern precisely the same subject matter.

Although the parties included provisions in each of their contracts that required them to protect the other party's confidential information and use it only to accomplish the objectives set out in each of the agreements, that fact does not change the character of those agreements. Each agreement aimed to accomplish distinctly different objectives, and their similar confidentiality provisions does not transform them into contracts that concern precisely the same subject matter. New York courts have held that contracts with far more similarities than the contracts at issue here failed to rise to the level of concerning precisely the same subject matter. *See FlightSafety Int'l, Inc. v. Flight Options, LLC*, 194 F. App'x 53, 55 (2d Cir. 2006) (2002 contract for pilot flight training with a general merger clause providing that it "supersedes all previous . . . agreements . . . with respect to its subject matter" was insufficient to declare as a matter of law that the contract superseded an earlier 1999 contract for pilot training); *Kreiss v. McCown DeLeeuw & Co.*, 37 F. Supp. 2d 294, 301 (S.D.N.Y. 1999) (subject matter of later employment separation agreement did not cover the award of stock options and equity to employee as did an earlier employment agreement with employee, so the later agreement did not supersede the earlier agreement in that regard). Consequently, the similarities between the confidentiality

provisions of the agreements do not establish that the Integration Agreement concerns precisely

the same subject matter as the NDA and the Teaming Agreement.

### E. Remedy and Warranty Disclaimer Provisions

Defendant also argues that because paragraph 11.11 of the Integration Agreement

preserved only pre-existing rights, not remedies, the Integration Agreement governs the remedies

available to Plaintiff for violating the NDA and Teaming Agreement even if it has no retroactive

effect. Def. Opp'n 9. Defendant points to sections 9 and 10 of the Integration Agreement in

support of that argument. Section 9 is a warranty disclaimer that disclaims all warranties that are

not expressly provided for in the Integration Agreement and provides that the parties waive the

right to recover consequential, special, and punitive damages "for breach of any provisions of

this agreement." Integration Agreement ¶¶ 9.1–9.2. Section 10 of the Integration Agreement

limits damages "arising out of or connected in any way with this Agreement . . . to One Million

Dollars." *Id*. ¶ 10.

By its own terms, the Section 9 warranty disclaimer and the damages limitations in

Section 9 and Section 10 clearly apply only to claims arising from a breach of the Integration

Agreement. Defendant argues that because Section 10 limits damages that are "connected in any

way" with the Integration Agreement, Plaintiff cannot seek damages over $1 million for any of

its claims because they all are "connected" to the Integration Agreement through their similar

confidentiality provisions. This argument amounts to another less direct effort to establish

retroactive application of the Integration Agreement. If the parties wanted to limit the damages

available to them under the NDA and the Teaming Agreement by executing the Integration

Agreement, they could have included specific language in the Integration Agreement that the

damages limitation applied to the earlier NDA and Teaming Agreement. Instead, the parties

17 – OPINION & ORDER

chose explicit language that preserved the rights of both parties under the NDA and Teaming

Agreement and chose an effective date for the Integration Agreement that began two years after

the Teaming Agreement. Defendant's proffered interpretation of sections 9 and 10 would expand

the damages limitation and warranty disclaimer beyond the boundaries of the Integration

Agreement, which is inconsistent with the plain language of those provisions. Paragraph 11.11

"does not limit or discharge the rights of either party existing prior to the existence of this

Agreement" and sections 9 and 10 apply to "this Agreement." That language manifests the

parties' intent to preserve their claims against one another under earlier agreements and their

intent that the warranty disclaimer and damages limitations provisions applied only to claims for

breach of the Integration Agreement. As a result, sections 9 and 10 of the Integration Agreement

do not limit the damages that Plaintiff can recover for a breach of the NDA or the Teaming

Agreement.

CONCLUSION

The Court GRANTS Plaintiff's Motion for Partial Summary Judgment [80].

IT IS SO ORDERED.


DATED:____September 2, 2020____.


_____
MARCO A. HERNÁNDEZ
United States District Judge