**Chad M. Colton, OSB #065774**
ChadColton@MarkowitzHerbold.com
**Adam M. Starr, OSB #125393**
AdamStarr@MarkowitzHerbold.com
**Stanton R. Gallegos, OSB #160091**
StantonGallegos@MarkowitzHerbold.com
**Daniel J. DiCicco, OSB #073730**
DanDiCicco@MarkowitzHerbold.com
**Kathryn P. Roberts, OSB #064854**
KathrynRoberts@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR  97201
Tele: (503) 295-3085
Fax:  (503) 323-9105

Attorney for Plaintiff Opal Labs Inc.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **OPAL LABS INC.**, an Oregon corporation, | No. 3:18-01192-HZ |
| Plaintiff, | **THIRD AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |
| v. | |
| **SPRINKLR, INC.**, a Delaware corporation; | |
| Defendant. | |

Plaintiff Opal Labs, Inc. alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Opal is an Oregon corporation with its principal place of business in Portland, Oregon.

2.      Sprinklr is a Delaware corporation with its principal place of business in New York.  Sprinklr maintains an office in Portland, Oregon.

3.      Sprinklr solicited business from, and did business with, Opal in this district on numerous occasions from 2014 through 2017.  Sprinklr conducted this business via in-person

meetings, telephone calls, and electronic communications.  Sprinklr continues to conduct regular and sustained business in this district.

4.      Sprinklr solicited business from, and did business with, numerous other businesses in this district during this same period.

5.      Opal suffered injury in this district, caused by Sprinklr, as described below. Opal's damages exceed $75,000.

6.      This district is a proper venue because a substantial part of the events giving rise to Opal's claims occurred in this district.

**BACKGROUND**

7.      Opal is a Portland-based software company that provides content creation, marketing and planning software and services to large companies throughout the country.  By using Opal, companies can create and plan their marketing campaigns through a variety of channels.  Opal's software is highly proprietary and is not available for download or sold on physical discs or other media.  Instead, it is only available through an online system to customers that have signed nondisclosure and confidentiality agreements.

8.      The features, functions, capabilities, and user interface of Opal's software give Opal a competitive edge in the marketplace.

9.      Sprinklr is a large software company based in New York City.  Sprinklr provides a broad software platform that facilitates global companies to market their products to consumers on social media.

10.     One of Sprinklr's primary capabilities was the ability to publish and analyze advertising and marketing content on social media.  As of early 2014, Sprinklr's software platform did not have the comprehensive content creation, marketing and planning capabilities that Opal had.

11.     Prior to 2014, Opal's content creation, marketing and planning capabilities were complementary to Sprinklr's publishing and analytic capabilities.  For example, customers could create, collaborate on, and plan their marketing campaigns and advertisements in Opal's software, and then use Sprinklr to publish those campaigns and advertisements on social media.

**Page 2 -        THIRD AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

**A.      Sprinklr and Opal begin exploring an integration of their software products.**

12.      Global shoe and apparel company Nike was a mutual client of both Opal and Sprinklr.  Nike used Opal for content creation and planning and used Sprinklr for publishing that content.

13.      In early 2013, Nike asked Opal and Sprinklr to explore the possibility of a technical integration of their software to make it easier for Nike to create and plan marketing content in Opal, and then send it to Sprinklr for online publication and analysis.

14.      Both Opal and Sprinklr agreed to explore the possibility of this technical integration, but before sharing any information or any portions of its software with Sprinklr, Opal insisted on a non-disclosure agreement with Sprinklr.

15.      On July 17, 2013, Opal and Sprinklr signed a Confidential Mutual Non-Disclosure Agreement (the "NDA"), which provided that the parties would exchange confidential information for the purpose of establishing a business relationship, but that the recipient of any confidential information would not use it for any other purpose for a period of two years.

**B.      Sprinklr and its development team access Opal's software without Opal's knowledge or authorization.**

16.      Unbeknownst to Opal, at the same time that Opal and Sprinklr were working to integrate their software for Nike, Nike employee Paul Herman started exploring the possibility of using one software platform for all of Nike's marketing activities (e.g., content creation, authoring, planning, publishing, analytics, and engagement).  He called this idea the Unified Content Platform ("UCP").

17.      At Herman's direction, and again, unbeknownst to Opal, Nike hired Sprinklr to assist with the research and development of the unified platform.

18.      Sprinklr, however, provided only the most basic content planning capabilities.  It did not have the robust content creation and planning capabilities contained in Opal's software.  Consequently, various employees at Nike insisted on continuing to use Opal for content creation and planning.

**Page 3 -        THIRD AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

19.     To address this gap in Sprinklr's software, Herman compiled information about Opal's confidential and proprietary software, and on March 3, 2014, without Opal's knowledge or consent, forwarded a document outlining that information to Sprinklr.  Herman asked Sprinklr to refer to the document to determine how much it would cost Sprinklr to build the functional equivalent of Opal for use in the UCP.

20.     Shortly after that, under the guise of "integration," Sprinklr requested that Herman authorize and provide Sprinklr with credentials to access Opal's live customer environment.  Herman authorized the access.

21.     On April 10, 2014, without Opal's knowledge or authorization, Sprinklr obtained the login credentials for Opal's live customer environment from a Nike employee who Herman had instructed to authorize that access.  Unbeknownst to Opal, Sprinklr's engineering and software development team in India began combing through Opal's live customer environment.

22.     Opal's live customer environment was highly proprietary and subject to strict confidentiality requirements.  Indeed, Herman, by virtue of agreeing to Opal's Terms of Use, was prohibited from disclosing information obtained from Opal to any third parties, making any derivative products, or otherwise using his access to Opal to compete with Opal in any way.  In addition, when Opal licensed its software to Nike, Nike agreed it would not provide access to Opal's software to other software developers like Sprinklr, would not copy Opal's software in any way, and would not create any software based on or derived from Opal's software.

23.     Sprinklr was aware that Herman and Nike had entered into agreements prohibiting the disclosure or misuse of Opal's software.

24.     Opal later heard that Sprinklr presented a prototype of a supposedly new content creation and marketing software to Nike that was similar to Opal's software.  Opal checked its login records and discovered that Sprinklr had accessed Opal's live customer environment and provided it to Sprinklr's software development team in India, who proceeded to comb through virtually every aspect of Opal's software.

**Page 4 -      THIRD AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

**C.      Sprinklr's executive team lies to Opal to cover up their misconduct.**

25.      Opal immediately sent a cease and desist letter to Sprinklr.  That letter ultimately led to a telephone call on May 1, 2014, between two of Opal's executives, Steve Giannini and George Huff, and three of Sprinklr's executives, Murali Swaminathan, Luke Quanstrom, and Chief Executive Officer Ragy Thomas.

26.      During the call, Thomas claimed that the sole reason for Sprinklr's access to Opal's live customer environment was for the technical integration of the two systems.

27.      Thomas further stated that although he understood why Opal had thought Sprinklr accessed Opal's live customer environment for the purpose of competing, there had simply been a "misunderstanding."

28.      During the call, Thomas stated that Sprinklr contained only "baseline content planning capabilities" and that Sprinklr did not plan to develop the type of "elaborate" brand content creation and planning available in Opal's software.  Thomas claimed that Sprinklr "count[ed] on partners like [Opal] to have a specialized solution" in content creation and planning.  Thomas and his executive team further reassured Opal that Sprinklr "was not getting into the specialized world."

29.      Thomas told Opal, "I assure you that we're playing a different game."

30.      Thomas told Opal that, "We're chasing different rainbows" (i.e., not competing) and represented that Sprinklr had no interest in further developing its content creation, planning marketing collaboration abilities or competing with Opal.

31.      During that same call Thomas told Opal that he saw great value in jointly pitching Sprinklr's and Opal's complementary services and that the two companies should partner together to cross-market their complementary software to clients.

32.      Unbeknownst to Opal, in the weeks before the May 1, 2014 call with Opal, Thomas and his executive team had seen or exchanged internal emails about Sprinklr's efforts to replicate Opal's software and to replace Opal at Nike, and knew that Sprinklr's development team in India was accessing the live customer environment for that purpose.  Thomas and his executive team also knew that Herman had provided Sprinklr with written information about

**Page 5 -**        **THIRD AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

Opal's capabilities and had asked Sprinklr to build the functional equivalent of Opal. Thomas and his executive team said nothing about these facts to Opal during the May 1, 2014 call.

33.    Based on Sprinklr's assurances during the phone call and Thomas' seeming showing of good faith, Opal believed that Sprinklr had no plans of competing with Opal and that Sprinklr's access to Opal's software had indeed been a misunderstanding.

34.    Per Thomas' suggestion, Sprinklr and Opal later entered into a Teaming Agreement to cross-market the benefits of using both software platforms to clients.

**D.    Sprinklr and Herman cut a "sweetheart deal" and use Opal's software to build a new marketing collaboration platform.**

35.    Unbeknownst to Opal, Sprinklr continued working to develop a content creation, marketing and planning module that could replace Opal at Nike.

36.    In early 2015, Sprinklr hired a new employee named Paul Michaud to assist with the development of Sprinklr's content creation, marketing and planning module.

37.    Shortly before joining Sprinklr, Michaud had seen a demonstration of Opal's software while working for his previous employer. Michaud and his employer were subject to a strict non-disclosure agreement with Opal that barred their use or disclosure of information learned during the demonstration.

38.    But after joining Sprinklr, Michaud provided Sprinklr's executive team, its engineers, and its development team with the confidential information about Opal's software that he had obtained from Opal.

39.    In early 2015, Sprinklr began offering a beta version of its new content creation, marketing and planning module, which Sprinklr later named "Content Marketing" ("CM"). Sprinklr's CM module was based in part on the confidential and trade secret information that Sprinklr had improperly obtained from Opal.

40.    Throughout 2015, Sprinklr worked with Herman to bring Herman's UCP concept to life, which Herman eventually named "Beacon." As part of those efforts, Sprinklr and Herman planned to incorporate Sprinklr's CM module into Beacon for content planning, and thereby replace Opal at Nike. But Nike still considered the user interface and usability of

Sprinklr's CM module to be deficient.  Since Herman would need to convince others at Nike to move away from Opal, Herman used his allotted UCP budget to have Nike engage a third-party design firm, R/GA, to work with his team and with Sprinklr to design an improved, custom user interface for Beacon that could be layered onto Sprinklr's CM module and improve some of the user interface and usability problems inherent in the module.

41.    Without Opal's knowledge or authorization, Herman provided Sprinklr and R/GA with confidential and proprietary information about Opal's user interface and features.  Sprinklr representatives, including its design team and software engineers, participated in meetings with Herman and R/GA in which elements of Opal's user interface and features were reviewed, discussed, and planned for incorporation into Beacon.  During that same time period, both Sprinklr and Herman accessed Opal's software to reference Opal's confidential and proprietary information.  Sprinklr and Herman intended to use Sprinklr's CM software with the new R/GA user interface to replace Opal at Nike for content planning.

42.    But even with the custom user interface that R/GA had designed, Sprinklr's content planning module was still deficient.  In February 2016, Nike rejected Sprinklr's content planning module that was incorporated into Beacon as its exclusive planner and opted to continue with Opal.  Eventually Nike decided to move off Beacon altogether.

43.    By February 2016, Sprinklr had also heard from other customers in the market that they preferred Opal for content planning due to its superior user interface and user experience.  So, upon learning that Nike would not be using Sprinklr's content planning module in Beacon, Sprinklr determined to re-double its efforts to design and develop new content planning software that could rival Opal.  Sprinklr called its new content planning software "Planner 2.0."  Sprinklr's Planner 2.0 would not be based on Beacon or the design work that R/GA had done on Beacon.

44.    In connection with Nike's move away from Beacon, Sprinklr offered to provide Nike its upcoming Planner 2.0 module, which Sprinklr called a "full replacement" of the Opal software.  Additionally, Sprinklr promised to provide Planner 2.0 to Nike at a significant discount and for only a fraction of the cost of Opal.  Nike accordingly planned to evaluate

Planner 2.0 once the module was ready and determine whether Sprinklr had sufficiently improved its new content planning offering.

45.    Meanwhile, Opal, unaware of Sprinklr's misrepresentations, covert activities, and sweetheart deal with Nike, worked cooperatively with Sprinklr to cross-market clients on the value of using both software platforms.  In connection with these efforts, and at Sprinklr's request, Opal provided Sprinklr with access to an Opal "sandbox"—a test environment where Sprinklr had limited access to Opal's software to gain familiarity with Opal's features and functions.

46.    But in order to access the sandbox, Opal required Sprinklr, through its employees, to agree to Opal's Terms of Use.  Those Terms of Use expressly prohibited Sprinklr from using its access to the Opal sandbox to create derivative software or otherwise use Opal's software to compete in any way with Opal.

47.    Under the guise of "teaming activities," Sprinklr accessed and reviewed Opal's software many times throughout 2015 and 2016.  But this was merely a cover for Sprinklr to study Opal's confidential and proprietary information and use it to design, develop, and sell a competing content planning software product.  Throughout that time period, Sprinklr also continued to receive Opal's confidential and trade secret information from Herman and his subordinates.

48.    By early 2017, Sprinklr had largely built Planner 2.0.  Planner 2.0's user interface, user experience, and many of its features were based on Opal's confidential and trade secret information.  Nike then concluded that Opal's software was duplicative of Sprinklr's Planner 2.0 and decided to replace Opal with Planner 2.0.  Nike internally branded Sprinklr's Planner 2.0 and the broader Sprinklr software that Nike used for publishing and other tasks as the "Athlete Management Platform" or "AMP."  In early 2017, Nike notified Opal that it would be replacing Opal's software with Sprinklr's Planner 2.0.

49.    In February 2017, Herman left his position at Nike to take a new, more lucrative job with Sprinklr.

## FIRST CLAIM FOR RELIEF

### (Fraud)

50.     Opal incorporates paragraphs 25 through 34 as if fully stated in this claim.

51.     In April 2014, Sprinklr accessed Opal's software without Opal's knowledge or authorization.

52.     During their May 10, 2014 telephone call with Opal, Sprinklr executives falsely represented to Opal executives that there had been a "misunderstanding" concerning Sprinklr's access to Opal's software, that Sprinklr had merely accessed Opal's software for integration purposes, that Sprinklr had not used any of Opal's confidential information, that Sprinklr had long contained a very "basic" and "high level" marketing collaboration feature that did not rival Opal's robust platform, that Sprinklr had no interest in further developing its marketing collaboration abilities or competing with Opal, and that Opal and Sprinklr were "chasing different rainbows."

53.     During that same telephone call, Sprinklr executives falsely represented to Opal executives that Sprinklr was interested in jointly marketing Sprinklr's and Opal's capabilities and partnering together to provide their complementary services to clients.

54.     Sprinklr's executive team knew that their representations to Opal were false and that they were indeed planning to create a competing software to market to Nike and other potential clients.

55.     Sprinklr's executive team made these misrepresentations with the intent to deceive Opal and induce Opal to continue in a business relationship with Sprinklr, to provide Sprinklr with further access to Opal's software, and to trick Opal into believing that it did not face a competitive threat to its relationship with Nike from Sprinklr.

56.     Opal's executive team was unaware of Sprinklr's true plan and the falsity of Sprinklr's representations.

57.     Opal's executive team relied on Sprinklr's representations by taking, or not taking, the following actions:

a. By continuing a business relationship with Sprinklr;

b. By not filing an immediate lawsuit against Sprinklr to stop its use of the Opal information that Sprinklr had accessed;

c. By giving Sprinklr access to its software in order to cross-market and pitch clients on the benefits of using Opal and Sprinklr together;

e. By agreeing to continue integration efforts with Sprinklr for their mutual client Nike;

f. By continuing to allow Herman and his team at Nike to have access to Opal's software;

g. By providing Sprinklr with access to the Opal sandbox, thereby giving Sprinklr access to certain of Opal's information; and

h. In the event that any information underlying Opal's claim for Misappropriation of Trade Secrets does not qualify as a trade secret under Oregon law, by providing Sprinklr with access to that information.

58. Based on Opal's familiarity with Sprinklr's executive team, Sprinklr's historically distinct software capabilities and market goals, and Opal's lack of access to Sprinklr's internal discussions, correspondence, and prototypes, Opal justifiably relied on Sprinklr's misrepresentations.

59. As the direct and proximate result of Sprinklr's fraud, Opal has been damaged in an amount to be determined at trial.

60. Sprinklr's conduct was willful, wanton, and malicious.  Opal accordingly seeks punitive damages in an amount to be determined at trial.

**SECOND CLAIM FOR RELIEF**

**(Breach of the Teaming Agreement)**

61. Opal incorporates the preceding paragraphs.

62. Opal and Sprinklr entered into the Teaming Agreement to jointly promote their complementary services.

**Page 10 - THIRD AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

63.     Among other terms, Sprinklr agreed not to take, retain, use, or disclose Opal's confidential, non-public, or proprietary information, including confidential information obtained prior to the signing of the Teaming Agreement.

64.     In particular, the Teaming Agreement stated that each party "may be given access to confidential, non-public proprietary information of the other party (the "Discloser"), either by the Discloser or by a third party."  The Teaming Agreement further stated that the recipient of any such information "may use Discloser's Confidential Information only in connection with the Teaming Activities permitted under this Agreement."  Sprinklr further agreed that it would not "disclose any Confidential Information of Discloser to any third party without the prior written consent of Discloser."  The Teaming Agreement's confidentiality provisions stated that each party would be responsible for its employees' compliance.  Further, the Teaming Agreement stated that "all Confidential Information, and all creative work, including without limitation, business plans, designs, sketches, software, programs, ideas, concepts, designs, methodologies, structures, or models, shall remain the sole and exclusive property of the Discloser."

65.     Sprinklr breached these terms of the Teaming Agreement.  Among other things, Sprinklr gained access to Opal's confidential information through Opal, Herman, and other third parties.  In particular, Sprinklr gained access to Opal's software and to its strategic documents. Sprinklr then used this information to develop and promote its own knockoff version of Opal's software and services.

66.     Development and promotion of a competing product was not a use permitted by the terms of the Teaming Agreement.  Indeed, the use of Opal's confidential information in this manner breached the provision of the Teaming Agreement that granted Opal "sole and exclusive" property rights in "all creative work, including without limitation business plans, designs, sketches, software, programs, ideas, concepts, designs, methodologies, structures, or models."

67.     Opal has fully performed its contractual obligations under the Teaming Agreement or is excused from such performance by Sprinklr's breach.

**Page 11 -      THIRD AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

68.     As a result of Sprinklr's breach of the Teaming Agreement, Opal has suffered harm in an amount to be proven at trial, plus other consequential and incidental damages to be proven at trial, and prejudgment interest.  In addition, Opal is entitled to recover prevailing party attorney fees under the terms of the agreement.

## THIRD CLAIM FOR RELIEF

### (Breach of Covenant of Good Faith and Fair Dealing (Teaming Agreement))

69.     Opal incorporates the preceding paragraphs.

70.     The Teaming Agreement imposed duties of good faith and fair dealing upon Sprinklr.

71.     Sprinklr breached its duty of good faith and fair dealing by, among other things, utilizing its access to Opal's confidential strategic planning and software to develop and promote a competing product, and by encouraging mutual clients to sever existing business agreements with Opal.

72.     Sprinklr's actions were a material breach, were not within the objectively reasonable expectations of Opal when it entered into the contract, and constitute a breach of Sprinklr's implied covenant of good faith and fair dealing.

73.     As a result of Sprinklr's breach of its duty of good faith and fair dealing, Opal has suffered harm in an amount to be proven at trial, plus other consequential and incidental damages to be proven at trial, and prejudgment interest.  In addition, Opal is entitled to recover prevailing party attorney fees under the terms of the agreement.

## FOURTH CLAIM FOR RELIEF

### (Breach of the Non-Disclosure Agreement)

74.     Opal incorporates the preceding paragraphs.

75.     Opal and Sprinklr entered into the Non-Disclosure Agreement to explore potential business opportunities.

76.     Among other terms, Sprinklr agreed not to take, retain, use, or disclose Opal's confidential, non-public, or proprietary information for any purpose other than exploring business opportunities between the two companies.

77.     Sprinklr breached these terms of the Non-Disclosure Agreement.  Among other things, Sprinklr gained access to Opal's confidential information through Opal, Herman, Nike, and other third parties.  In particular, Sprinklr gained access to Opal's software and to its strategic documents.  Sprinklr then used this information to develop and promote its own knockoff version of Opal's software and services.

78.     Development and promotion of a competing product was not a use permitted by the terms of the Non-Disclosure Agreement.

79.     Opal fully performed its contractual obligations under the Non-Disclosure Agreement or is excused from such performance by Sprinklr's breach.

80.     As a result of Sprinklr's breach of the Non-Disclosure Agreement, Opal has suffered harm in an amount to be proven at trial, plus other consequential and incidental damages to be proven at trial, and prejudgment interest.  In addition, Opal is entitled to recover prevailing party attorney fees under the terms of the agreement.

### FIFTH CLAIM FOR RELIEF

### (Breach of Covenant of Good Faith and Fair Dealing (Non-Disclosure Agreement))

81.     Opal incorporates the preceding paragraphs.

82.     The Non-Disclosure Agreement imposed duties of good faith and fair dealing upon Sprinklr.

83.     Sprinklr breached its duty of good faith and fair dealing by, among other things, utilizing its access to Opal's confidential strategic planning and software to develop and promote a competing product.

84.     Sprinklr's actions were a material breach, were not within the objectively reasonable expectations of Opal when it entered into the contract, and constitute a breach of Sprinklr's implied covenant of good faith and fair dealing.

85.     As a result of Sprinklr's breach of its duty of good faith and fair dealing, Opal has suffered harm in an amount to be proven at trial, plus other consequential and incidental damages to be proven at trial, and prejudgment interest.  In addition, Opal is entitled to recover prevailing party attorney fees under the terms of the agreement.

## SIXTH CLAIM FOR RELIEF

### (Breach of Terms of Use Agreement)

86.     Opal incorporates the preceding paragraphs.

87.     In connection with its efforts to work with Sprinklr to market their respective products to customers, Opal created a "sandbox" environment where Sprinklr employees could view a limited version of Opal's software and use its features to gain familiarity with Opal for purposes of jointly pitching Opal's and Sprinklr's products and to explore the creation of a demonstration environment for marketing purposes.  To gain access to this sandbox, Sprinklr employees agreed to abide by the Terms of Use.

88.     The Terms of Use explicitly stated that they applied not only to the individual user, but also to that person's employer, here Sprinklr.

89.     Access to the Opal sandbox environment was provided at the request of a senior executive at Sprinklr that was charged with managing Sprinklr's relationship with Opal.  At his request, Opal provided logins to other Sprinklr employees, including Nick Schwartz, ostensibly to enable them to act on Sprinklr's behalf to advance the partnership between Sprinklr and Opal. Both the senior executive and Schwartz had authority to agree to the Terms of Use on Sprinklr's behalf and/or had the apparent authority to do so.

90.     The Terms of Use agreement prohibits using the Opal platform to, among other things: "commercially exploit any part of the Opal Platform without [Opal's] express consent"; "use the Opal Platform as part of any effort to compete with [Opal] or provide similar products or services"; "trick, defraud, or mislead [Opal]"; "attempt to bypass any measures [Opal] designed or implemented to prevent or restrict access to the Opal Platform"; "unlawful, infringing or fraudulent purposes"; to "create derivative works from, or reverse engineer any

portion of the Opal platform"; or to use the Platform for any "unlawful, infringing or fraudulent purposes."

91.    Additionally, Sprinklr agreed to "not create applications or program code using, based upon, incorporating, or referencing the Opal Platform or Opal Content, or permit any other user, Affiliate, or third party from doing the same."  The remedy for such a breach includes an assignment, for no consideration, of such applications and program code:

> If you or any third party acting on our Customer's behalf, creates applications or program code using or based upon the Opal Platform or Opal Content, such applications and program code shall be automatically assigned to us for no consideration, and you shall, at your cost and expense execute all documents and undertake all actions necessary to perfect our ownership of such applications and program code.  This assignment is not an exclusive remedy for any infringement or related violation of these Terms.

92.    Opal has fully performed its contractual obligations under the Terms of Use agreement, or is excused from such performance.

93.    Sprinklr materially breached the Terms of Use agreement by, among other things, using its knowledge of the Opal Platform gained through this sandbox environment to, among other things, attempt to create a "derivative product" and creating an application "based upon" Opal's platform.

94.    Among other violations of the Terms of Use, Sprinklr used its access to the Opal Platform to "create applications or program code using, based upon, incorporating, or referencing the Opal Platform or Opal Content."

95.    Under the Terms of Use, those applications and program code, including Sprinklr's competing product, have been automatically assigned to Opal for no consideration and Sprinklr is obligated to "execute all documents and undertake all actions necessary to perfect our ownership of such applications and program code."  Damages are inadequate to fully compensate Opal for this breach because damages are not an adequate substitute for Opal's continued ownership of its intellectual property (including derivatives of that intellectual property) and because of the difficulty proving damages.

**Page 15 -**    **THIRD AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

96.     As a result of Sprinklr's breach of the Terms of Use by creating its competing product "using, based upon, incorporating, or referencing the Opal Platform or Opal Content," Opal is entitled to specific performance of Sprinklr's obligation to "execute all documents and undertake all actions necessary to perfect" Opal's ownership of Sprinklr's competing product.

97.     As a result of Sprinklr's breaches, Opal has suffered harm in an amount to be proven at trial, plus other consequential and incidental damages to be proven at trial, and prejudgment interest.

## SEVENTH CLAIM FOR RELIEF

### (Breach of Covenant of Good Faith and Fair Dealing (Terms of Use Agreement))

98.     Opal incorporates the preceding paragraphs.

99.     The Terms of Use agreement imposed duties of good faith and fair dealing upon Sprinklr.

100.    Sprinklr breached its duty of good faith and fair dealing by, among other things, using its access to the Opal "sandbox" to develop and promote a knockoff of Opal's product.

101.    Sprinklr's actions were a material breach and were not within the objectively reasonable expectations of Opal when it entered into the contract.  Sprinklr's actions constitute a breach of its implied covenant of good faith and fair dealing.

102.    As a result of Sprinklr's breach of its duty of good faith and fair dealing, Opal has suffered harm in an amount to be proven at trial, plus other consequential and incidental damages to be proven at trial, and prejudgment interest.

## EIGHTH CLAIM FOR RELIEF

### (Alternative Claim for Breach of the Integration Agreement)

103.    Opal incorporates the preceding paragraphs.

104.    In April 2016, Opal and Sprinklr executed an Integration Agreement in exchange for valuable consideration.

105.    Sprinklr contends that some or all of its accused conduct in this case are governed under the Integration Agreement.  Opal disputes Sprinklr's contention.

106.    In the event that any of Sprinklr's conduct at issue in this case arose under the Integration Agreement, then Sprinklr's conduct described in the preceding paragraphs breached the Integration Agreement and smack of intentional wrongdoing and/or were done with malice, bad faith, and/or reckless indifference.

107.    Opal has fully performed its contractual obligations under the Integration Agreement, or is excused from such performance.

108.    As a result of Sprinklr's breaches, Opal has suffered harm in an amount to be proven at trial, plus other consequential and incidental damages to be proven at trial, and prejudgment interest.

## NINTH CLAIM FOR RELIEF

### (Alternative Claim for Breach of Covenant of Good Faith and

### Fair Dealing (Integration Agreement))

109.    Opal incorporates the preceding paragraphs.

110.    The Integration Agreement imposed duties of good faith and fair dealing upon Sprinklr.

111.    To the extent that the Integration Agreement governs any of Sprinklr's conduct in this case, Sprinklr materially breached its duty of good faith and fair dealing through the actions detailed in the paragraphs above.  Sprinklr's conduct smacks of intentional wrongdoing and/or was done with malice, bad faith, and/or reckless indifference.

112.    Sprinklr's actions were not within the objectively reasonable expectations of Opal when it entered into the contract.

113.    As a result of Sprinklr's breach of its duty of good faith and fair dealing, Opal has suffered harm in an amount to be proven at trial, plus other consequential and incidental damages to be proven at trial, and prejudgment interest.

## TENTH CLAIM FOR RELIEF

### (Declaratory Relief)

114.    Opal incorporates the preceding paragraphs.

115.    Sprinklr was contractually bound by the Terms of Use in connection with its access to Opal's proprietary software.

116.    By agreeing to the Terms of Use, Sprinklr agreed to "not create applications or program code using, based upon, incorporating, or referencing the Opal Platform or Opal Content, or permit any other user, Affiliate, or third party from doing the same." The Terms of Use state that any applications or program code created based on the Opal Platform or Opal Content "shall be automatically assigned to [Opal] for no consideration," and the party must "undertake all actions necessary to perfect [Opal's] ownership of such applications and program code."

117.    Opal has fully performed its contractual obligations under the Terms of Use agreement, or is excused from such performance.

118.    Sprinklr used its access to the Opal Platform to "create applications or program code using, based upon, incorporating, or referencing the Opal Platform or Opal Content."

119.    Opal asserts that under the Terms of Use, those applications and program code, including Sprinklr's competing product, have been automatically assigned to Opal for no consideration. Upon information and belief, Sprinklr disputes that fact.

120.    As a result, there is a present and actual case or controversy between the parties regarding the ownership of the applications and program code that Sprinklr created using, based upon, incorporating, or referencing the Opal Platform or Opal Content, including Sprinklr's competing product.

121.    The existence of this dispute creates a justiciable controversy between the parties, which this Court may hear pursuant to 28 U.S.C. § 2201(a).

122.    Opal requests a declaration and judicial determination that:

a.    Sprinklr's competing product was, in whole or in part, created using, based upon, incorporating, or referencing the Opal Platform or Opal Content; and

b.    Sprinklr's competing product, or any portion thereof created using, based upon, incorporating, or referencing the Opal Platform or Opal Content, has been automatically assigned to and is presently owned by Opal.

**Page 18 -    THIRD AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

## ELEVENTH CLAIM FOR RELIEF

### (Injunction)

123.    Opal incorporates the preceding paragraphs.

124.    Sprinklr was only able to develop and promote its competing product and services by using Opal's confidential and proprietary information including Opal's non-public software. Sprinklr stole this software and information from Opal.  Sprinklr is improperly benefitting from the use of Opal's stolen property.

125.    As a direct and proximate result of defendants' conduct, Opal has been injured and has suffered and will continue to suffer irreparable harm.

126.    Unless restrained by this Court, Sprinklr will continue the complained of acts, including retaining, disclosing, directly or indirectly using, or otherwise misappropriating Opal's confidential and proprietary information such as its non-public software and confidential strategic planning information.

127.    Because of the difficulty of measuring damages and future harm, Opal has an inadequate remedy at law and is entitled to an order enjoining the conduct of Sprinklr.

128.    Opal thus requests that Sprinklr, and anyone acting in concert with it, be immediately and permanently enjoined from:

        a.    Selling, marketing, or developing Sprinklr's knockoff content creation, marketing and planning software platform;

        b.    Retaining Opal's confidential and proprietary information;

        c.    Disclosing Opal's confidential and proprietary information; and

        d.    Using Opal's confidential and proprietary information.

129.    Opal further requests that Sprinklr, and anyone acting in concert with it be ordered to immediately turn over all of Opal's trade secret and confidential and proprietary information misappropriated by Sprinklr, and for an assignment of ownership of any product, application, or code, that is based on, in whole or in part, the Opal Platform or Opal Content, including but not limited to Sprinklr's competing product.

130.    Opal reserves the right to seek a temporary restraining order.

**Page 19 -    THIRD AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

## TWELFTH CLAIM FOR RELIEF

### (Violation of the Uniform Trade Secrets Act)

131.    Opal incorporates all paragraphs above, except 25 through 34 and 50 through 60.

132.    Opal keeps, or at all material times kept, information about the functionality and capabilities of many of the features contained in its software a secret.  These features included Opal Presentations, Opal Insights, Opal Preview, and Opal StoryFirst Framework.

133.    Opal also keeps information concerning the prices it charges for the development and use of its software a secret.

134.    Opal's information about the features, functionality, and pricing of its software derive value from not being generally known to the public or Opal's competitors.  Opal expended significant time, resources, and money to develop this information.  Without meaningful access to this information, Opal's competitors cannot readily replicate Opal's software, develop products that compete with Opal, contrast their software with Opal, or underbid Opal's prices for its software.

135.    Opal makes reasonable efforts to maintain the secrecy of its information by shielding public access to its software and pricing data.  Opal only provides access to its software, its accompanying features and functionality, and its pricing information to clients or prospective clients after securing strict confidentiality and non-disclosure agreements.

136.    Through its own access to Opal's software, Sprinklr removed, retained, disclosed, and directly or indirectly used or otherwise misappropriated Opal's trade secret information to develop, research, market, and sell its own knockoff software and services.

137.    In addition, Sprinklr acquired Opal's trade secret information from Herman and Nike, and it knew or had reason to know that the information provided by Herman and Nike was non-public and that Herman and Nike had a duty to maintain its secrecy.  Sprinklr also improperly acquired Opal's trade secret information through Mr. Michaud, who had obtained information about Opal's trade secrets while at his prior employer.  Sprinklr improperly acquired that information from Mr. Michaud in direct violation of his obligations under the non-disclosure agreement between Opal and his prior employer.

138.    Sprinklr was not authorized to retain or use Opal's trade secret information.

139.    As a result of the acts complained of above, Sprinklr has been unjustly enriched in an amount to be determined at trial. Sprinklr has successfully sold some clients, including Nike, its knockoff software and services. Under ORS 646.461 et al., Sprinklr's ill-gotten gains should be disgorged and paid to Opal.

140.    As a direct and proximate result of the conduct of Sprinklr, Opal has been injured and has suffered and will continue to suffer irreparable harm. Sprinklr's misappropriation raises serious liability issues and Opal has a high likelihood of success on the merits. The balance of hardships weighs in favor of enjoining Sprinklr's conduct.

141.    In addition, or alternatively, Opal has suffered harm in an amount to be proven at trial, plus other consequential and incidental damages to be proven at trial, and prejudgment interest.

142.    Sprinklr's misappropriation of Opal's trade secret information described above was willful and malicious. Opal is accordingly entitled to recover punitive damages against Sprinklr in an amount to be determined at trial.

143.    Opal has been required to retain counsel and commence this litigation in order to prevent and recover damages for Sprinklr's continued retention, disclosure, use, and misappropriation of Opal's trade secret information. Opal is entitled to recover its costs, disbursements, and reasonable attorney fees.

144.    In addition, Herman used his position as an Opal client employee to access Opal's confidential software and strategic information and interfere with Nike's relationship with Opal. Herman caused Sprinklr to gain access to this confidential, proprietary, and trade secret information that Sprinklr and Herman used to develop competing content planning software and solicit other Opal customers.

145.    Sprinklr and Herman acted in concert pursuant to a common design and scheme to pursue an unlawful object or course of action to be accomplished by unlawful means. Their common design and the scheme's primary and joint purpose was misappropriating Opal's

confidential, proprietary, and trade secret information to build competing software and interfere with Opal's business relationships with its current and future clients.

146.    Sprinklr committed one or more acts in furtherance of its civil conspiracy with Herman, and Sprinklr and Herman knowingly provided substantial assistance to each other's efforts undertaken for the purpose of harming Opal.

147.    Sprinklr and Herman also intentionally and knowingly aided and provided substantial assistance to each other in the commission of breaches of duties each owed to maintain the confidentiality of Opal's confidential, proprietary, trade secret information. Specifically, Herman intentionally supplied Sprinklr with confidential, proprietary, and trade secret information that Herman intentionally misappropriated from Opal. Sprinklr assisted Herman in misappropriating this information while he was an employee of Nike and then hired Herman and provided him with a salary and benefits as a reward and to help Sprinklr sell its competing to software to Opal clients and others in the market.

148.    Because Sprinklr (1) acted in concert with Herman to take Opal's confidential, proprietary, and trade secret information and to use that information to interfere with Opal's client relationships, or (2) aided and abetted Herman in the taking of Opal's confidential, proprietary, and trade secret information and used that information to interfere with Opal's client relationships, Sprinklr is jointly liable to Opal for all damages resulting from any and all acts committed in furtherance of their civil conspiracy.

## THIRTEENTH CLAIM FOR RELIEF

### (Tortious Interference with Economic Relations)

149.    Opal incorporates the preceding paragraphs.

150.    Opal had a contractual and business relationship with its client Nike.

151.    Opal had a contractual and business relationship with Mr. Michaud's prior employer.

152.    Opal has current contractual agreements and prospective economic relations with its existing clients.

**Page 22 -    THIRD AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

153.    Opal also has prospective contractual and business relationships with other potential clients.

154.    Sprinklr intentionally interfered with those business relationships by developing a knockoff version of Opal's software and services and promoting that knockoff to Nike and Opal's existing clients.  In engaging in these activities, Sprinklr intended to interfere with Opal's business relationships by siphoning off Opal's clients.

155.    Sprinklr used improper means to interfere with Opal's economic relations by making misrepresentations to Opal, surreptitiously gaining access to Opal's software and pricing information, misappropriating Opal's trade secrets, and misappropriating Opal's confidential information to develop a knockoff product that Sprinklr sold and is attempting to sell to Opal's clients and prospective clients.

156.    As a result of Sprinklr's interference with Opal's economic relations, Opal has suffered harm in an amount to be proven at trial, plus other consequential and incidental damages to be proven at trial, and prejudgment interest.

157.    Sprinklr's interference with Opal's business relationships described above was willful and malicious.  Opal is accordingly entitled to recover punitive damages against Sprinklr in an amount to be determined at trial.

158.    In addition, Herman used his position as an Opal client employee to access Opal's confidential software and strategic information and interfere with Nike's relationship with Opal. Herman caused Sprinklr to gain access to this confidential, proprietary, and trade secret information that Sprinklr and Herman used to develop competing content planning software and solicit other Opal customers.

159.    Sprinklr and Herman acted in concert pursuant to a common design and scheme to pursue an unlawful object or course of action to be accomplished by unlawful means.  Their common design and the scheme's primary and joint purpose was misappropriating Opal's confidential, proprietary, and trade secret information to build competing software and interfere with Opal's business relationships with its current and future clients.

160.    Sprinklr committed one or more acts in furtherance of its civil conspiracy with Herman, and Sprinklr and Herman knowingly provided substantial assistance to each other's efforts undertaken for the purpose of harming Opal.

161.    Sprinklr and Herman also intentionally and knowingly aided and provided substantial assistance to each other in the commission of breaches of duties each owed to maintain the confidentiality of Opal's confidential, proprietary, trade secret information. Specifically, Herman intentionally supplied Sprinklr with confidential, proprietary, and trade secret information that Herman intentionally misappropriated from Opal. Sprinklr assisted Herman in misappropriating this information while he was an employee of Nike and then hired Herman and provided him with a salary and benefits as a reward and to help Sprinklr sell its competing to software to Opal clients and others in the market.

162.    Because Sprinklr (1) acted in concert with Herman to take Opal's confidential, proprietary, and trade secret information and to use that information to interfere with Opal's client relationships, or (2) aided and abetted Herman in the taking of Opal's confidential, proprietary, and trade secret information and used that information to interfere with Opal's client relationships, Sprinklr is jointly liable to Opal for all damages resulting from any and all acts committed in furtherance of their civil conspiracy.

### DEMAND FOR JURY TRIAL

163.    Opal requests a jury trial on all issues so triable.

### PRAYER FOR RELIEF

WHEREFORE, Opal prays for relief as follows:

A.    That judgment be entered against Sprinklr on Opal's First Claim for Relief (Fraud) and that Opal be awarded damages (including punitives), attorney fees, and prejudgment interest at the statutory rate.

B.    That judgment be entered against defendant Sprinklr on Opal's Second Claim for Relief (Breach of the Teaming Agreement) and that Opal be awarded damages, attorney fees, and prejudgment interest at the statutory rate.

C.      That judgment be entered against defendant Sprinklr on Opal's Third Claim for Relief (Breach of Covenant of Good Faith and Fair Dealing (Teaming Agreement)) and that Opal be awarded damages, attorney fees, and prejudgment interest at the statutory rate.

D.      That judgment be entered against defendant Sprinklr on Opal's Fourth Claim for Relief (Breach of the Non-Disclosure Agreement) and that Opal be awarded damages, attorney fees, and prejudgment interest at the statutory rate.

E.      That judgment be entered against defendant Sprinklr on Opal's Fifth Claim for Relief (Breach of Covenant of Good Faith and Fair Dealing (Non-Disclosure Agreement)) and that Opal be awarded damages, attorney fees, and prejudgment interest at the statutory rate.

F.      That judgment be entered against defendant Sprinklr on Opal's Sixth Claim for Relief (Breach of Terms of Use Agreement) and that Opal be awarded specific performance of Sprinklr's obligation to "execute all documents and undertake all actions necessary to perfect" Opal's ownership of Sprinklr's competing product.  In addition, that Opal be awarded damages and prejudgment interest at the statutory rate.

G.      That judgment be entered against defendant Sprinklr on Opal's Seventh Claim for Relief (Breach of Covenant of Good Faith and Fair Dealing (Terms of Use Agreement)) and that Opal be awarded damages and prejudgment interest at the statutory rate, and for an assignment of ownership of any product, application, or code, that is based on, in whole or in part, the Opal Platform or Opal Content, including but not limited to Sprinklr's competing product.

H.      That judgment be entered against defendant Sprinklr on Opal's Eighth Claim for Relief (Alternative Claim for Breach of Integration Agreement) and that Opal be awarded be awarded damages and prejudgment interest at the statutory rate.

I.      That judgment be entered against defendant Sprinklr on Opal's Ninth Claim for Relief (Alternative Claim for Breach of Duty of Good Faith and Fair Dealing (Integration Agreement)) and that Opal be awarded be awarded damages and prejudgment interest at the statutory rate.

J.      That a declaration judgment be entered against Sprinklr on Opal's Tenth Claim for Relief (Declaratory Relief) stating:

**Page 25 -      THIRD AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

   a. Sprinklr's competing product is, in whole or in part, created using, based upon, incorporating, or referencing the Opal Platform or Opal Content; and

   b. Sprinklr's competing product, or any portion thereof created using, based upon, incorporating, or referencing the Opal Platform or Opal Content, has been automatically assigned to and is presently owned by Opal.

  K. That judgment be entered against Sprinklr on Opal's Eleventh Claim for Relief (Injunction) and that:

   a. Sprinklr, and anyone acting in concert with it, be immediately and permanently enjoined from:

    i. Selling, marketing, or developing Sprinklr's knockoff marketing software platform;

    ii. Retaining Opal's confidential and proprietary information;

    iii. Disclosing Opal's confidential and proprietary information; and

    iv. Using Opal's confidential and proprietary information.

   b. Sprinklr, and anyone acting in concert with it, be ordered to immediately turn over to Opal's counsel all of Opal's trade secret and confidential and proprietary information misappropriated by Sprinklr.

   c. Sprinklr be ordered to assign to Opal ownership of any product, application, or code, that is based on, in whole or in part, the Opal Platform or Opal Content, including but not limited to Sprinklr's competing product.

  L. That judgment be entered against Sprinklr on Opal's Twelfth Claim for Relief (Violation of the Uniform Trade Secrets Act) and that:

   a. Opal be awarded damages, plus prejudgment interest at the statutory rate.

   b. Opal be awarded punitive damages.

   c. Opal be awarded its costs and disbursements and reasonable attorney fees in an amount to be proven at trial.

   d. Sprinklr, and anyone acting in concert with it, either be immediately and permanently enjoined from:

**Page 26 -  THIRD AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

       i.        Retaining Opal's trade secret information;

       ii.       Disclosing Opal's trade secret information; and

       iii.      Using Opal's trade secret information.

M.     That judgment be entered against Sprinklr on Opal's Thirteenth Claim for Relief (Tortious Interference with Economic Relations) and that:

      a.     Opal be awarded damages, plus prejudgment interest at the statutory rate;

      b.     Opal be awarded punitive damages; and

      c.     Opal be awarded its costs and disbursements and reasonable attorney fees in an amount to be proven at trial.

N.     Any other relief the Court deems just and proper.

DATED this 29th day of March, 2021.

MARKOWITZ HERBOLD PC

By:    *s/ Chad M. Colton*
       Chad M. Colton, OSB #065774
       ChadColton@MarkowitzHerbold.com
       Adam M. Starr, OSB #125393
       AdamStarr@MarkowitzHerbold.com
       Stanton R. Gallegos, OSB #160091
       StantonGallegos@MarkowitzHerbold.com
       Daniel J. DiCicco, OSB #073730
       DanDiCicco@MarkowitzHerbold.com
       Kathryn P. Roberts, OSB #064854
       KathrynRoberts@MarkowitzHerbold.com

       Attorneys for Plaintiff

1123739